**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **Criminal No. 1:20-mj** |
| **OLUDAMILARE OLUGBUYI** | ) | |
| | ) | **Magistrate Judge G. Michael Harvey** |
| **Defendant.** | ) | |

**AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT**

I, Cole Ashcraft, being duly sworn, hereby depose and state as follows:

**Introduction**

1.      I am a special agent with the Treasury Inspector General for Tax Administration ("TIGTA"). From 2013 to 2019, I was a special agent with the U.S. Postal Service Office of Inspector General. From 2019 to present, I have been employed with TIGTA, where I have conducted multiple investigations related to fraud, waste, and abuse affecting the Internal Revenue Service ("IRS") and its efforts to successfully complete its tax administration mission.

2.      Throughout the course of my career, I have conducted an array of criminal investigations involving money laundering, bank fraud, public corruption, organized crime, and many other illegal schemes impacting financial institutions. I have experience conducting search, seizure and arrest warrant operations. Recently, I have been assigned to work with the U.S. Department of Justice and other law enforcement partners to investigate possible fraud associated with the stimulus and economic assistance programs created by the federal government in response to the COVID-19 program.

3.      This affidavit is made in support of a criminal complaint charging Oludamilare Olugbuyi with violations of 18 U.S.C. § 1014 (False Statements to a Financial Institution).

4.     This affidavit is based on my personal investigation and investigation by others, including federal law enforcement officials whom I know to be reliable and trustworthy.  The facts contained herein have been obtained by interviewing witnesses and examining documents obtained in the course of the investigation as well as through other means.  This affidavit does not include every fact known to me about this investigation, but rather only those facts sufficient to establish probable cause.

5.     This affidavit does not include each and every fact known to the government, but only those facts necessary to support a finding of probable cause to support the requested arrest warrant.

## Probable Cause

### *The Paycheck Protection Program*

6.     The Coronavirus Aid, Relief, and Economic Security ("CARES") Act is a federal law enacted in or around March 2020 and designed to provide emergency financial assistance to the millions of Americans who are suffering the economic effects caused by the COVID-19 pandemic.  One source of relief provided by the CARES Act was the authorization of up to $349 billion in forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP").  In or around April 2020, Congress authorized over $300 billion in additional PPP funding.

7.     In order to obtain a PPP loan, a qualifying business must submit a PPP loan application, which is signed by an authorized representative of the business.  The loan application is called an SBA Form 2483.  The PPP loan application requires the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan.  In the PPP loan application (SBA Form

2483), the small business (through its authorized representative) must state, among other things, its: (a) average monthly payroll expenses; and (b) number of employees.  These figures are used to calculate the amount of money the small business is eligible to receive under the PPP.  In addition, businesses applying for a PPP loan must provide documentation showing their payroll expenses and that they were in business as of February 15, 2020.

8.      A PPP loan application must be processed by a participating financial institution (the lender).  If a PPP loan application is approved, the participating financial institution funds the PPP loan using its own monies, which are 100% guaranteed by Small Business Administration ("SBA").  Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, is transmitted by the lender to the SBA in the course of processing the loan.

9.      PPP loan proceeds must be used by the business on certain permissible expenses— payroll costs, interest on mortgages, rent, and utilities.  The PPP allows the interest and principal on the PPP loan to be entirely forgiven if the business spends the loan proceeds on these expense items within a designated period of time (usually twenty-four weeks of receiving the proceeds) and uses a defined portion of the PPP loan proceeds on payroll expenses.

***Relevant Entities***

10.     Oludamilare Olugbuyi is a resident of the District of Columbia, who lives on New York Avenue, N.E. (the "New York Avenue Address").

11.     Global Street Construction, LLC ("Global Street") is a Limited Liability Corporation organized in the District of Columbia.  When investigators first researched the corporation on or around May 28, 2020, District of Columbia Department of Consumer and Regulatory Affairs ("DCRA") records listed the corporation's status as revoked.  When investigators checked DCRA

records for Global Street again on June 25, 2020, DCRA records showed the corporation as active, based on a 2019 annual report filing made on June 23, 2020 (five days after agents interviewed Mr. Olugbuyi on June 18, 2020, as described below).

12.    Bank 1 is a federally-insured financial institution headquartered in Pittsburgh, Pennsylvania that has offices nationwide.

***PPP Applications to Bank 1***

13.    On or about April 5, 2020, Bank 1 received an application (SBA Form 2483) for a $466,727.73 loan to Global Street.  The document, which bears Olugbuyi's signature, identifies Olugbuyi as the 100% owner of Global Street.  The application represented that the company had one employee and an average monthly payroll of $186,691.09.  By signing the application, Olugbuyi certified, among other things, that "[t]he Applicant is not engaged in any activity that is illegal under federal, state, or local law."  The application identified the New York Avenue Address as the business address of Global Street.

14.    With the Global Street application, Bank 1 received what purports to be several IRS forms documenting the company's payroll expenses.  As set forth below, a search of IRS and Social Security Administration ("SSA") records, as well as the statement of an individual employed by Global Street, establish that these documents are fraudulent.

a.    Bank 1 received an IRS Form 1099-MISC reporting that in 2019, Global Street paid $60,000 in compensation to Individual 1, of Temple Hills, Maryland.[1]  The document identified the taxpayer's social security number as 123-45-xxxx.  According to information provided by the SSA, this social security number is not assigned to Individual 1.  The IRS has no

---

[1] Employers file IRS Forms 1099-MISC to report miscellaneous payments, including nonemployee compensation.

record of receiving this 1099-MISC.

       b.     Bank 1 received an IRS Form 1099-MISC reporting that in 2019, Global Street paid $108,000 in compensation to Individual 2, of Hyattsville, Maryland.  The document identified the taxpayer's social security number as 946-97-xxxx.  According to information provided by the SSA, this social security number is invalid.  The IRS has no record of receiving this Form 1099-MISC.

       c.     Bank 1 received an IRS Form 1099-MISC reporting that in 2019, Global Street paid $60,000 in compensation to Individual 3, of Mount Rainier, Maryland.  The document identified the taxpayer's social security number as 123-45-xxxx.  According to information provided by the SSA, this social security number is invalid.  The IRS has no record of receiving this Form 1099-MISC.

       d.     Bank 1 received what purports to be an IRS Form 1099-MISC reporting that in 2019, Global Street paid $60,000 in compensation to Individual 4, of Washington, D.C.  The document identified the taxpayer's social security number as 123-45-xxxx.  According to information provided by the SSA, this social security number is invalid.  The IRS has no record of receiving this purported 1099-MISC.

       15.    On or about May 14, 2020, a representative of Bank 1 sent Olugbuyi an email (to the email account olugbuyi@globalstreetllc.com) which explained amounts paid to independent contractors could not be included in the PPP loan amount and asked Olugbuyi to provide copies of his 2019 IRS Tax returns, and a corrected SBA Form 2483, if necessary.  That day, Olugbuyi responded with an email stating: "I have attached the requested docs.  Thank you."  Olugbuyi attached to this email a file labeled "TaxReturn (ppp).pdf" and a revised SBA Form 2483 claiming an average monthly payroll of $8,333.33 for one employee.  This PDF purports to be a copy of an

amended tax return for Olugbuyi for tax year 2019.  The document reports an Adjusted Gross Income of $175,565 and a taxable income of $130,692.  A search for IRS filings associated with Olugbuyi for tax years 2019 and 2020, however, revealed a single filing: an IRS Form 1040 filed on April 14, 2020 claiming $1 in total income.  This Form 1040 is known as a "non-filer return" and is used by taxpayers who did not file returns for tax years 2018 and 2019 to obtain Coronavirus Aid, Relief, and Economic Security Act Economic Impact Payments (i.e., stimulus checks). According to information maintained by the IRS, Olubguyi received a $1,200 stimulus payment on or about April 29, 2020.  The amounts claimed on this return do not match the original return amounts claimed on the amended return submitted to Bank 1.  The IRS has no record of a tax return filed on behalf of Global Street.

16.     Ultimately, Bank 1 declined to fund both loans for both the April 5 and May 14, 2020 loan applications.

***Oludamilare Olugbuyi's First Statement to Special Agents on June 18, 2020***

17.     On or about June 18, 2020, special agents with TIGTA and the FBI spoke with Olugbuyi at the New York Avenue Address, which is his residence.

18.     In sum and substance, Olugbuyi relayed the following during the interview:

        a.      Olugbuyi owns Global Street, which is a general contracting firm that builds condominiums.  Global Street does not have any "W-2 employees," but instead relies on the work of independent contractors.  Many of Olugbuyi's contractors are not present in the United States legally.

        b.      When shown a copy of Global Street's April 5, 2020 PPP loan application, Olugbuyi confirmed that it was his signature on the document.  Olugbuyi submitted to Bank 1 two PPP loan applications.  The first application (dated April 5, 2020) included payroll disbursements

to contractors.  After a representative of Bank 1 advised that PPP rules did not allow applicants to include payments to contractors in the calculation of monthly payroll, Olugbuyi submitted a second application (dated May 14, 2020), which was based exclusively on his own income (that is, not including payment purportedly made to independent contractors).  Olugbuyi's contractors are presently working on two construction projects in Northeast Washington, D.C.

        c.      The names on the IRS Forms 1099 submitted to Bank 1 were members of Olugbuyi's "primary" construction crew.  When pressed for details on the specific jobs performed by each member, Olugbuyi was unable to articulate specific responsibilities and instead answered "we performed more as a unit."  When asked if he knows the contractors well, Olugbuyi explained that he is not close to them but that Individual 5, who works for Global Street, knows the contractors better and that Olugbuyi communicates with the individual contractors through Individual 5.

        d.      The last time that Olugbuyi filed a tax return was in 2013.  He has never filed a form 1099-MISC with the IRS.  Olugbuyi "was instructed" by someone – he did not specify whom – to create the tax forms that he submitted to Bank 1.  Olugbuyi told somebody at Bank 1 – he did not specify whom – that he did not file with the IRS the tax documents that he submitted with his loan applications and that the Bank 1 employee replied that it was permissible to do so. When advised that the social security numbers appearing on the Forms 1099 that he submitted to Bank 1 were invalid, Olugbuyi replied that he had to create social security numbers because his contractors were undocumented immigrants who did not have legitimate social security numbers.

***Individual 5's Statement to Special Agents on June 18, 2020***

      19.    Immediately following the interview with Olugbuyi, agents drove to the construction sites in Northeast Washington, D.C. that Olugbuyi referenced during his interview.  Agents

observed construction equipment at one of the constructions sites.  This site appeared to be an active construction site.

20.    At the construction site, agents identified Individual 5, who described himself as Global Street's representative on the site.  Individual 5 advised me that he needed to speak with Olugbuyi before talking with me.  Individual 5 then placed a call on his cellular phone, which I understood to be to Olugbuyi.  After speaking on the phone, Individual 5 continued to answer agents' questions.  When shown the Forms 1099-MISC that were submitted to Bank 1, Individual 5 said that he did not recognize the names of any of these purported contractors and that none of them worked for Global Street.  Individual 5 told me that he had worked for Global Street for several years.

***Oludamilare Olugbuyi's Second Statement to Special Agents on June 18, 2020***

21.    After speaking with Individual 5, the agents who interviewed Olugbuyi earlier in the day received a telephone call from Olugbuyi.

22.    During the call, Olugbuyi asked why the agents were investigating him given that Bank 1 declined his PPP applications.  When agents explained that they were investigating whether the Forms 1099 that Olugbuyi provided to Bank 1 were authentic, Olugbuyi said that the authenticity of the forms was irrelevant because Bank 1 had advised him that payments to 1099 independent contractors could not be included in payroll calculations for the purposes of the PPP.  When asked directly whether the individuals identified on the Forms 1099 submitted to Bank 1 were real people, Olugbyi declined to answer the question and instead asserted that the question was irrelevant.

23.    Based on my training and experience, and the information provided in this affidavit, I respectfully submit that there is probable cause to believe that Oludamilare Olugbuyi, within the

District of Columbia, committed violations of 18 U.S.C. § 1014 (False Statements to a Financial

Institution).

I declare under penalty of perjury that the statements above are true and correct to the best

of my knowledge and belief.

Cole Ashcraft
Special Agent
Treasury Inspector General for Tax Administration


Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
telephone, this 30th day of June, 2020


The Honorable G. Michael Harvey
United States Magistrate Judge